UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRITC OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL HOLMAN, Individually, and as Independent Administrator on behalf of the Estate of ELAINE COOK, Deceased, | ) ) ) ) | Case No. 19ap00645 |
| Plaintiff, | ) ) ) | Honorable Deborah L. Thorne |
| v. | ) ) ) | |
| JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER COMPANIES, INC., JOHNSON & JOHNSON CUSTOMER LOGISTICS SERVICES, LLC, and WALGREEN CO., | ) ) ) ) ) ) | (Removal from Circuit Court of Cook County, Law Division, 2018-L-1811) |
| Defendants. | ) | |

**Memorandum Opinion**

**Introduction & Background**

This matter comes before the court upon Cheryl Holman's ("Holman") motion to remand certain removed state law claims back to state court. Holman is the administrator of the estate of Elaine Cook ("Cook"), deceased. Holman is suing Johnson & Johnson ("J&J") (and others) on various legal theories, all arising under state law, to recover damages against J&J for its role in allegedly causing cancer-related injuries to Cook. The injuries allegedly arise out of exposure to talc used in J&J's products.

J&J allegedly acquired most or all of its talc from Imerys, a company now in bankruptcy in the District of Delaware.[1] J&J argues that removal of the state law claims to this court is proper under 28 U.S.C. § 1452(a) due to the pending Imerys bankruptcy case and the existence of "related to" bankruptcy jurisdiction over the state law claims under 28 U.S.C. § 1334(b). For

---

[1] Several Imerys entities are in bankruptcy. The court will refer to them all as "Imerys" for simplicity's sake.

the following reasons, this court disagrees and orders that the claims be remanded to the Circuit Court of Cook County.

## Discussion

I.     **Removal, Jurisdiction, and the Power to Enter an Order Remanding the State Law Claims**

J&J has removed the claims to this court under 28 U.S.C. § 1452(a). This statute provides in pertinent part that "[a] party may remove any claims or cause of action in a civil action . . . to the district court for the district *where such civil action is pending*, *if such district court has jurisdiction of such claim* or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a) (emphasis added). Accordingly, removal under section 1452(a) is appropriate only if subject matter jurisdiction under section 1334 exists over the removed claims.

Subject matter jurisdiction exists under section 1334(b) over claims "related to" a pending bankruptcy case. 28 U.S.C. § 1334(b).[2] The district court has referred subject matter jurisdiction over "related to" claims to this court. 28 U.S.C. § 157(a); N.D. Ill. L.R. 40.3.1(a).[3] Accordingly, the claims were properly removed to this court in the first instance, and this court may therefore pass on the propriety of the removal. *See* 28 U.S.C. § 157(a); N.D. Ill. L.R. 40.3.1(a); Fed. R. Bankr. P. 9001(3), 9027(a)(1); *Gianakas v. Exchange Nat'l Bank of Chicago (In re Gianakas)*, 56 B.R. 747, 751–52 (N.D. Ill. 1985); *City of Joliet v. Bank One, Chicago, N.A. (In re Green)*, 210 B.R. 556, 558 (Bankr. N.D. Ill. 1997). The fact that Imerys's bankruptcy case is pending in Delaware and not in this district is irrelevant. 28 U.S.C. § 1452(a) ("where *such civil action* is pending") (emphasis added); *Engra, Inc. v. Gabel (In re Engra, Inc.)*, 86 B.R. 890, 893 (S.D. Tex. 1988).

---

[2] Arising in or arising under jurisdiction plainly does not exist here, and no one argues that it does.
[3] This court's authority to enter a final order resolving the claims in the absence of consent, however, would likely be lacking. 28 U.S.C. § 157(c)(1).

If subject matter jurisdiction under section 1334(b) is lacking, the claims must be remanded back to state court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be remanded*.") (emphasis added); *Hernandez v. Brakegate, Ltd.*, 942 F.2d 1223, 1225–26 (7th Cir. 1991); *see also* 28 U.S.C. § 1452(a) (noting that removal is only proper if the court has jurisdiction under section 1334). This court has subject matter jurisdiction to consider its own jurisdiction. *Bayo v. Napolitano*, 593 F.3d 495, 500 (7th Cir. 2010) ("[A] federal court always has jurisdiction to determine its own jurisdiction.") (quotations and citations omitted). And this court has the power to issue an order remanding the claims back to state court, even if the underlying claims being remanded are non-core state law claims being brought by a non-debtor against a non-debtor (as is the case here). *See, e.g.*, *Podkolzin v. Amboy Bus Co.*, 402 B.R. 539, 543 n.5 (E.D.N.Y. 2009); *Scherer v. Carroll*, 150 B.R. 549, 552 (D. Vt. 1993); *Rachmale v. Conese*, 515 B.R. 567, 569 n.2 (Bankr. E.D. Mich. 2014); *Citcorp Savings of Ill. v. Chapman (In re Chapman)*, 132 B.R. 153, 160–61 (Bankr. N.D. Ill. 1991).

## II.    Several Preliminary Matters

Several preliminary matters need to be addressed at the outset. First, in reaching its decision, this court will apply the law of the Seventh Circuit, even though Imerys's bankruptcy case is pending in the Third Circuit. Under section 1452(a), this court must look to its own jurisdiction, and section 1452(b) similarly speaks of the court to which the claims have been removed as being the proper court to equitably remand the claims. *See* 28 U.S.C. § 1452(a)–(b); s*ee also Cabibi v. Avon Prod., Inc.*, No. CV1903037CJCJCX, 2019 WL 1976438, at *2 (C.D. Cal. May 3, 2019) (looking to the law of the Ninth Circuit notwithstanding the fact that Imerys's bankruptcy case is pending in the Third Circuit).

3

Second, J&J urges this court to defer ruling until after the Delaware District Court rules on the pending section 157(b)(5) motion. But J&J has removed the claims to this court under section 1452(a). Section 1452(a) prompts an inquiry into this court's *jurisdiction*, and section 1452(b) prompts an inquiry into whether it is prudent for this court to exercise jurisdiction even if it exists. *See* 28 U.S.C. § 1452(a)–(b). Section 157(b)(5), by contrast, is not jurisdictional at all; that section relates only to the proper federal trial venue for personal injury and wrongful death tort claims. *Stern v. Marshall*, 564 U.S. 462, 479–80 (2011) (holding that section 157(b)(5) is not jurisdictional). Accordingly, this court believes that the interplay between sections 157(b)(5) and 1452 does not give this court a sound legal reason to delay a jurisdictional inquiry under section 1452, especially where such a delay would likely operate to the prejudice of the state court plaintiff. This court therefore declines to stay the resolution of this matter pending the outcome of the section 157(b)(5) motion in Delaware. *Cabibi*, 2019 WL 1976438, at *3 n.2; *Holman v. Honeywell Int'l, Inc.*, No. 4:01CV2030CEJ, 2002 WL 32727081, at *1–2 (E.D. Mo. Jan. 25, 2002).

Finally, the parties raise legal questions about whether mandatory abstention is appropriate in this case and whether J&J has complied with the proper time limits in removing the state law claims to this court. *See* 28 U.S.C. §§ 1334(c)(2), 157(b)(2)(B), 157(b)(4); *see also* 28 U.S.C. § 1446(b)(1), (3); Fed. R. Bankr. P. 9027(a)(2). Because this court rules below that it lacks subject matter jurisdiction, and because the court further rules that it would equitably remand the claims to state court under section 1452(b) even if subject matter jurisdiction did exist, the court does not reach the merits of these other points of contention.

4

### III.    J&J's Burden to Establish that "Related To" Jurisdiction Exists over the State Law Claims

J&J has the burden of demonstrating that "related to" jurisdiction under section 1334 is proper. *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013); *see also Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 161 (S.D.N.Y. 2013). Importantly, any doubts are to be resolved in favor of Holman, who chose a state court forum for her lawsuit. *Morris*, 718 F.3d at 668; *see also Lothian*, 487 B.R. at 161.

"Related to" jurisdiction under section 1334 is narrowly construed in the Seventh Circuit out of respect for state courts and for Article III of the federal constitution. *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996). "[C]ommon sense cautions against an open-ended interpretation of the 'related to' statutory language in a universe where everything is related to everything else." *Id.*

> [T]he ['related to'] language should not be read . . . broadly. [It] is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum.

*Id.* (quoting *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994)).

Additionally, where (as here) the claims are being brought neither by nor against the debtor, "[a] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" *Id.* at 213–14 (quoting *Matter of Mem'l Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991)). Any such impact on the asset pool or on the allocation of property to creditors must be direct and substantial. *See Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990).

### IV.    J&J's Arguments Considered

J&J makes three arguments to support "related to" jurisdiction over the state law claims. First, J&J argues that certain contractual indemnification agreements exist between J&J and Imerys that might be triggered by the state court litigation. Second, J&J argues that J&J and Imerys share insurance policies, polices that are property of Imerys's bankruptcy estate and that may be affected by the state court litigation against J&J. Third, J&J argues that J&J and Imerys share an "identity of interest." The court examines each argument in turn, bearing in mind J&J's burden and the narrow scope of "related to" jurisdiction in this circuit.

First, J&J argues that J&J might be entitled to indemnification from Imerys for expenses and/or liability incurred as a result of the state court litigation. This fact can suffice to establish "related to" jurisdiction *if* J&J's potential indemnity claim has been filed as a *proof of claim* against the Imerys bankruptcy estate. *See In re ALT Hotel, LLC*, 479 B.R. 781, 807 (Bankr. N.D. Ill. 2012); *River Oaks Ltd. P'ship v. Things Remembered, Inc.*, No. 92 C 7877, 1993 WL 147409, at \*2–3 (N.D. Ill. May 3, 1993); *see also In re Hemingway Transp., Inc.*, 954 F.2d 1, 8 (1st Cir. 1992) (noting that even if an indemnification claim based on a pre-petition contract is contingent on post-petition events and/or is unliquidated, the indemnification claim is still a pre-petition claim capable of being filed and proved against the estate). J&J has neither alleged nor argued that any such proof of claim has been filed. *See* Notice of Removal, Docket No. 1, at ¶ 20 (referencing a memorandum of law attached as an exhibit); Mem. Law in Support of J&J's Delaware Mot., Docket No. 1, Ex. C, at 321–23 (failing to mention any proof of claim against the Imerys estate based on J&J's alleged contractual indemnification rights). Neither has J&J said that its indemnification claims fall within the ambit of 11 U.S.C. § 1111(a). J&J mentions only that the bar date in the Imerys bankruptcy case has not yet passed, and thus J&J "has not waived its right to file a proof of claim." J&J's Response, Docket No. 17–1, at 17 n.10. This may

6

be true, but without having filed an actual claim against the Imerys estate at the time of removal, there is nothing to evidence a "*real* or *tangible* or conceivable impact upon the allocation of property among creditors." *In re Salem Mills, Inc.*, 148 B.R. 505, 509 (Bankr. N.D. Ill. 1992) (emphasis added). This court cannot simply assume that J&J will file a proof of claim based on any indemnification agreements. *In re Spaulding & Co.*, 111 B.R. 689, 694 (Bankr. N.D. Ill.) ("Many factors go into a creditor's decision whether to file a proof of claim and this court cannot assume that such a proof of claim will be filed."), *aff'd*, 131 B.R. 84 (N.D. Ill. 1990). As such, the possible existence of indemnification claims that *could be* pressed against Imerys's bankruptcy estate does not establish "related to" jurisdiction over the state law claims. *ALT Hotel*, 479 B.R. at 807; *Salem Mills*, 148 B.R. at 509; *River Oaks*, 1993 WL 147409, at *2–3; *see also Morris*, 718 F.3d at 668 (noting that the burden is on the party seeking removal).[4]

Second, J&J argues that J&J and Imerys share certain insurance policies that might be affected by the Holman lawsuit. The problem with this argument is that J&J points to general statements that the shared policies exist, but J&J does not point to specific language in any particular policies themselves. It is therefore not possible for the court to conclude, for jurisdictional purposes, that J&J and Imerys do *in fact* share insurance subject to the same cap that will be affected by the Holman lawsuit. J&J's shared insurance argument thus does not support the existence of "related to" jurisdiction over the state law claims asserted in the Holman

---

[4] J&J also argues that *Imerys* might have some sort of indemnification claim *against J&J*. While this may be true in the abstract, it is difficult to see why J&J would owe Imerys for J&J incurring expenses/liability while defending *itself* in the Holman lawsuit. Perhaps it is possible that if Imerys is sued in other litigation based on talc claims, J&J might owe Imerys under an indemnification agreement. But again, Imerys is not a party to and is not defending in the *Holman lawsuit*, so there is no rational basis to believe that the Holman lawsuit *at issue here* would trigger a right to payment in favor of Imerys against J&J. *See Morris*, 718 F.3d at 668 (noting that doubts are resolved in favor of the state court plaintiff). Thus, the possible existence in the abstract of a contractual indemnification right in favor of Imerys against J&J cannot support "related to" jurisdiction over the removed state law claims being asserted in the Holman lawsuit.

lawsuit. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 232–33 (3d Cir. 2004); *FedPak*, 80 F.3d at 213 (expressly stating that the test for "related to" jurisdiction in the Seventh Circuit is more limited than the "sweeping" test articulated in the Third).

The argument generally runs as follows. Since Imerys's pre-petition contractual right to insurance proceeds would be property of its bankruptcy estate, the requisite nexus for "related to" jurisdiction might be established if J&J could draw on the same insurance pool to cover expenses/liability stemming from the Holman lawsuit, since to draw on a common insurance fund with a shared cap would tend to decrease the value of the insurance to the Imerys estate. *Cf. In re Dow Corning Corp.*, 86 F.3d 482, 494 (6th Cir. 1996) (discussing a similar argument).

Even in the Third Circuit it would likely be improper to base "related to" jurisdiction on shared insurance without evidence as to the precise terms and scope of the shared insurance policies at issue. *Combustion Eng'g*, 391 F.3d 190, 232–33 (3d Cir. 2004). The same should hold true in the Seventh Circuit, where "related to" jurisdiction is construed more narrowly. *FedPak*, 80 F.3d at 213 (expressly stating that the test for "related to" jurisdiction in the Seventh Circuit is more limited than the "sweeping" test articulated in the Third).

J&J has not pointed to any evidence in the record establishing the precise terms of the allegedly shared insurance policies themselves. The only evidence that J&J primarily points to is comprised of statements that the shared policies exist (along with a 2001 supply agreement requiring one of the Imerys entities to maintain insurance naming J&J as an insured). *See* Notice of Removal, Docket No. 1, at ¶ 20 (referencing a memorandum of law attached as an exhibit); Mem. Law in Support of J&J's Delaware Mot., Docket No. 1, Ex. C, at 323–24; Declaration of John H. Denton, Docket No. 1, Ex. C, at 334–35; Declaration of Alexandra Picard, Docket No.

1, Ex. C, at 359–60, 361.[5] True, the cited declarations do contain statements that J&J maintained commercial general liability insurance from the 1950s until 1986 and that it is J&J's belief that this insurance would cover it for the talc claims being asserted in the Holman lawsuit. Declaration of John H. Denton, Docket No. 1, Ex. C, at 334. There are also statements that Imerys (or at least one of the Imerys entities currently in bankruptcy) is *claiming* that it is also covered by those policies for talc claim losses. *Id.* at 335. One declarant asserts that at least one Imerys entity has rights to insurance coverage issued to J&J with limits in an unknown amount. Declaration of Alexandra Picard, Docket No. 1, Ex. C, at 359–60 (seemingly giving an approximate total amount for *both* the J&J insurance and the Standard Oil insurance). The same declarant notes that "[Imerys] lacks knowledge as to the total remaining and available limits of the insurance policies issued to J&J and its subsidiaries." *Id.* at 361. Regardless of the unknown available limits, Imerys is at least *claiming* that it is entitled to approximately $2 billion from J&J's insurance. J&J's Response, Docket No. 17–1, at 10 (citing the Nolan declaration).[6]

These statements do not provide a basis for the court to make the requisite findings as to the "terms and operation of the subject policies." *Combustion*, 391 F.3d at 232–33; *see also FedPak*, 80 F.3d at 213–14 (noting the more limited definition of "related to" jurisdiction used in the Seventh Circuit). J&J's recently filed response and its attached materials have not added any new evidence into the record on the subject of the shared insurance policies. *See* J&J's Response, Docket No. 17–1, at 9, 9 n.2, 10, 11, 11 n.5, 17 n.10, 19, 20, 21, 21 n.12, 22, 28 n.18 (all pages where J&J mentions shared insurance but does not reference any newly added materials or add

_____

[5] That is, neither the exhibit memorandum of law cited in the original removal papers nor the more recently filed response/opposition memorandum directly references the terms of any specific insurance policy.
[6] This citation to the Nolan declaration appears to actually be a citation to the Picard declaration; the Nolan declaration does not have the numbered paragraph referenced by J&J, and the Picard declaration states the $2 billion figure at the same paragraph number referenced by J&J's response.

any new assertions in support). J&J has not directly referenced any actual, specific insurance contracts.

Thus, bearing in mind J&J's burden, this court cannot rule at this point that J&J and the Imerys debtors share insurance subject to the same cap based on the declarations alone. The statements in the declarations are not enough in light of J&J's burden and in light of the narrow construction placed on "related to" jurisdiction in this circuit, where the claims at issue must have a "direct and substantial" impact on property of the Imerys estate for "related to" jurisdiction to exist. *FedPak*, 80 F.3d at 213; *Morris*, 718 F.3d at 668; *Sugar*, 913 F.2d at 1239. Without more precise evidence, such as direct references to the relevant parts of the insurance contracts themselves and/or some concrete indication from the insurer (or a ruling from a court) to the effect that the policies do indeed cover J&J and Imerys both,[7] "related to" jurisdiction cannot exist over the Holman lawsuit claims based on the alleged shared insurance policies.

Finally, J&J argues that each talc product that it sold contained talc that had been produced by Imerys, meaning that J&J and Imerys share an identity of interest such that "related to" jurisdiction under section 1334 is appropriate even though Imerys is not a party to the Holman lawsuit. *See generally* J&J's Response, Docket No. 17–1, at 21 ("Further, because the lawsuits involve the same products containing the Debtors' talc, J&J's and the Debtors' shared identity of interest supports jurisdiction."). The cases relied upon by J&J for this proposition, such as *Dow Corning*, themselves rely on the very broad and sweeping test for "related to" jurisdiction that has been expressly rejected by the Seventh Circuit. *See Dow Corning*, 86 F.3d at

---

[7] True, J&J cites at least one declaration which in turn cites a letter from an insurer discussing which of the Imerys entities *may* have coverage under certain policies that may also cover J&J. The letter, however, is very equivocal: the insurer specifically states that it "cannot presently confirm" whether there is even a successor-in-interest at all to the originally insured entity ("Windsor Minerals"), let alone whether that successor-in-interest is one the Imerys entities. *See* Travelers Letter, Docket No. 1, Ex. C, Part III, at 8.

489; *see also FedPak*, 80 F.3d at 213 (rejecting this sweeping test). J&J does not cite any decisions either from the Seventh Circuit or applying Seventh Circuit law for its "identity of interest" theory. *See Morris*, 718 F.3d at 668 (noting that the burden is on the party seeking removal). J&J does not attempt to assert that Imerys (or its bankruptcy estate), though a non-party to the Holman lawsuit, could become effectively bound by an adverse ruling in that lawsuit anyways due to principles of non-party preclusion. *See, e.g., Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1132 (Ill. App Ct. 2011) (Illinois law); *Taylor v. Sturgell*, 553 U.S. 880 (2008) (federal law); *Kunzelman v. Thompson*, 799 F.2d 1172, 1178 (7th Cir. 1986) (federal law).

Moreover, and more importantly, the "identity of interest" theory of "related to" jurisdiction is not a completely independent basis for jurisdiction based simply on the Holman lawsuit involving the "same products containing the Debtors' talc," as J&J appears to assert. J&J's Response, Docket No. 17–1, at 21. At least one court of appeals has noted that an "identity of interest" between the debtor and the non-debtor party is usually found to exist in certain cases *because of* possible indemnity claims or shared insurance policies. *Combustion Eng'g*, 391 F.3d at 225 n.35, 230–31. This court has already concluded above that the existence of indemnification agreements and the *possible* existence of shared insurance are not enough to establish "related to" jurisdiction in this circuit for the purposes of removal under section 1452(a). It would be anomalous and inconsistent to now rule that "related to" jurisdiction exists under an "identity of interest" theory where the success of that theory depends on the very indemnification agreements and possible shared insurance agreements already ruled to be insufficient to establish jurisdiction. Hence, this court concludes that "related to" jurisdiction does not exist based upon any identity of interest theory.

11

Accordingly, this court concludes that it does not have subject matter jurisdiction over the removed state law claims under 28 U.S.C. § 1334(b). Remand is therefore appropriate. *See* 28 U.S.C. § 1447(c); *Hernandez*, 942 F.2d at 1225–26.

## V.    Equitable Remand

Even if subject matter jurisdiction did exist, however, this court would still remand the claims under section 1452(b). That section provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). In deciding whether to equitably remand claims, courts have looked to the same factors as those employed in a discretionary abstention analysis under 28 U.S.C. § 1334(c)(1). *See In re Webster Place Athletic Club LLC*, No. AP 18 A 916, 2019 WL 1012789, at *8 (Bankr. N.D. Ill. Feb. 28, 2019) (quoting *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (laying out factors for consideration in connection with 28 U.S.C. § 1334(c)(1)). The factors to be considered include:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189; *see also Webster Place*, 2019 WL 1012789, at *8 (applying these factors to determine whether to remand claims under section 1452(b)).

As to factor 1, J&J asserts that this claim "will . . . impact the overall theory, timing, and implementation of any chapter 11 plan." J&J's Response, Docket No. 17–1, at 28. It asserts that it would be more efficient to have claimants like Holman proceed in federal court. *Id.* J&J assumes that the District Court for the District of Delaware will fix federal trial venue for the claims in Delaware, *see id.* ("centralized venue"); 28 U.S.C. § 157(b)(5), though it is important to note that the Delaware District Court has not yet so ruled.

It is not obvious that a federal forum will result in increased administrative efficiency from the Imerys estate's point of view. The suit is not against Imerys, so by definition the suit could not conceivably be resolved in a more summary manner through the claims allowance process in Imerys's federal bankruptcy case. *See* 11 U.S.C. §§ 501, 502; 28 U.S.C. § 157(b)(2)(B); *Katchen v. Landy*, 382 U.S. 323, 329 (1966) (distinguishing between summary and plenary proceedings). Even if the suit were against Imerys, the suit's likely personal injury / wrongful death character would mean that, unless waived, there would exist a right to have the suit tried in the district court, with any right to a jury trial on the claims being preserved. 28 U.S.C. §§ 157(b)(5), 1411(a). If, as J&J asserts, the Holman lawsuit's main impact on Imerys's estate comes from shared insurance contracts and indemnification agreements, it is difficult to understand why that impact would be lessened or made easier to predict by forcing Holman to litigate her claims in federal as opposed to state court. If there is a reason to believe that a federal court would more expeditiously resolve the claims, J&J has not articulated to the court's satisfaction what that reason would be. Accordingly, factor (1) is neutral at best.

Factor 2 squarely favors remand. That factor asks the extent to which state law issues predominate over bankruptcy issues. *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. This factor is considered significant. *Id.*; *Matter of L & S Indus., Inc.*, 989 F.2d

929, 935 (7th Cir. 1993); *see also Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1265 (7th Cir. 1997) ("[W]e cannot share [appellant's] indignation that questions of Illinois law should be decided by the state courts of Illinois rather than by this court.").

There is no indication at this point that the claims will *necessarily* end up presenting any discrete legal issues (as opposed to factual issues), but if any legal issues are presented during the course of the Holman lawsuit (as is likely), those issues will necessarily be state law, and not bankruptcy law, issues. This is because the Holman lawsuit asserts nothing but state law claims against non-debtor parties. Thus, factor 2 favors remand.

Factor 3 counsels against remand. Factor 3 looks at the "difficulty or unsettled nature of the applicable law." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. There is nothing to indicate that the Holman lawsuit will present or has presented any *difficult* or *unsettled* issues of state law best left to the state courts. Accordingly, factor 3 counsels against remand.

Factor 4 looks to "the presence of a related proceeding commenced in state court or other nonbankruptcy court." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. According to J&J, the Holman lawsuit is one of thousands of a similar character commenced all over the country against J&J, Imerys, or both. The Holman lawsuit is one of many consolidated proceedings that had been commenced in the Cook County Circuit Court, but some or all of those proceedings have also been removed now to this court. Factor 4 is neutral.

Factor 5 asks the court to examine "the jurisdictional basis, if any, other than 28 U.S.C. § 1334." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. The District Court has already ruled that diversity jurisdiction (28 U.S.C. § 1332) does not exist over the claims. J&J has not tried to assert that there exists any federal jurisdictional basis for the claims other

14

than 28 U.S.C. § 1334. Accordingly, factor 5 favors remand, since there is no other federal jurisdictional basis for the claims.

Factor 6 also favors remand. Factor 6 demands an inquiry into "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. *If* jurisdiction existed over the Holman claims, the degree of their relatedness to the Imerys estate would be slight. Imerys is not a defendant. The main impact on the estate would be from (1) indemnification agreements, which would allow J&J to assert a claim against the Imerys estate, and from (2) *possible* shared insurance agreements, which could potentially deplete the amount of insurance funds directly available to the Imerys estate. J&J, however, has not alleged that it has filed a claim or that it is deemed to have a claim against the Imerys estate for any indemnification obligations. J&J has also not provided concrete proof of shared insurance. While the Holman lawsuit *could* have a conceivable impact on Imerys's bankruptcy case, the suit would still be remote from the Imerys bankruptcy. Accordingly, factor 6 favors remand.

Factor 7 prompts this court to look at "the substance rather than form of an asserted 'core' proceeding." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. This proceeding is a suit by a non-debtor against a non-debtor based purely on state law; no one has argued that the proceeding either is core or would be core if jurisdiction existed. *See* 28 U.S.C. § 157(b)(1)–(2); *U.S. Brass Corp.*, 110 F.3d at 1268 ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law."). Accordingly, factor 7 favors remand.

15

Factor 8 speaks of "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. There are no core bankruptcy matters from which to sever the state law claims; as indicated above in connection with factor 2, these state law claims do not, on their own, present issues of bankruptcy law. Even if it were assumed that core bankruptcy matters were implicated by the Holman lawsuit, it would be entirely feasible to allow judgments to be entered in state court against J&J. J&J is not a debtor in bankruptcy; the bankruptcy court presiding over the Imerys bankruptcy would likely never be called upon to directly enforce any judgment against J&J. And if the court were called upon to enforce any such judgment against J&J, and if jurisdiction existed under section 1334 for the bankruptcy court to enforce any such judgment against J&J, it is hard to see why it would not be feasible for that court to do so. Factor 8 favors remand.

Factor 9 directs the court to look at "the burden of [the bankruptcy court's] docket." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. There is nothing to indicate that this court's docket is currently unduly burdened or that the Holman lawsuit (considered either in isolation or in connection with the related removed proceedings) would cause such an undue burden. Factor 9 counsels against remand.

Factor 10 prompts an inquiry into "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. J&J's prior failed attempt to remove the Holman lawsuit to federal court under 28 U.S.C. § 1332 lends credence to the idea that J&J simply wants to be in federal court, and that J&J is not predominantly motivated by concerns related to Imerys's bankruptcy case. Due to the prior attempt to bring the Holman

16

lawsuit to federal court using a different jurisdictional hook, this factor favors remand. But not by much. This court is not presently in a position to know precisely what J&J's subjective removal motivations are.

Factor 11 asks the court to address "the existence of a right to a jury trial." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. Presumably the existence of such a right favors remand. This factor should not weigh heavily in the balance, however, due to the likelihood that a jury trial would also exist in federal court should the claims not be remanded. The federal constitutional jury guarantee appears to be broader than its Illinois counterpart. *See Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 753 (Ill. 1994) (describing the two constitutional rights). Further, it is very unlikely, given that the Holman claims are asserted *against J&J* and not against a debtor in bankruptcy (Imerys), that any jury trial right could be limited in federal court due to Imerys's pending bankruptcy case; that is, these state law claims are not being asserted against Imerys's estate or as part of dischargeability proceedings, where an otherwise inviolable jury trial right on state common law issues might be lost. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 57–58 (1989); *Matter of Hallahan*, 936 F.2d 1496, 1507–08 (7th Cir. 1991). It is also possible (even likely) that these state law claims are personal injury / wrongful death tort claims, meaning that any jury trial right would be preserved in federal court even if they were being asserted as claims against Imerys's estate and/or in dischargeability proceedings. *See* 28 U.S.C. § 1411(a); *see also* 28 U.S.C. § 157(b)(5).[8]

---

[8] Section 523's debt-specific dischargeability provisions ordinarily do not apply to a corporate debtor in chapter 11 anyways, *see* 11 U.S.C. §§ 523(a) ("individual debtor"), 1141(d)(2) ("individual"); *In re Am. Properties, Inc.*, 30 B.R. 239, 246 (Bankr. D. Kan. 1983), meaning that the risk of a loss of a jury trial right due to that section is virtually non-existent in this context. The risk is already incredibly low, of course, for the simple reason that the state law claims being asserted here are not being asserted against Imerys, the debtor in bankruptcy, either in the claims allowance context or in the debt-dischargeability context.

Accordingly, because both parties' rights to a jury trial would likely not be curtailed in federal court, this factor is neutral, even if all of the state law claims carry with them jury trial rights under Illinois law.

Factor 12 asks about the "presence in the proceeding of nondebtor parties." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d at 1189. This factor favors remand. The debtor (Imerys) is not present at all in the proceeding. The proceeding is one being brought by a non-debtor against non-debtors. Accordingly, this factor favors remand.

To sum up, then, seven factors favor remand, three are more or less neutral, and two favor not remanding the claims. At bottom, these claims are state law claims being brought by a non-debtor against non-debtors. The claims had been pending in state court prior to the commencement of Imerys's bankruptcy case. While it is *possible* that the resolution of the state law claims could have an impact on the administration of Imerys's estate, that impact would not be direct. Accordingly, even if jurisdiction existed, this court would remand the claims to state court under section 1452(b).

## Conclusion

There is no jurisdiction over these removed state law claims. Even if there were, equitable remand would be appropriate. A separate order will be entered in conformity with this opinion.

Date: 05/22/2019

Honorable Deborah L. Thorne
United States Bankruptcy Judge